**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JASMINE L.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Civil Action No. 20-14543 (SDW)

**OPINION**

January 25, 2022

**WIGENTON**, District Judge.

    Before this Court is Plaintiff Jasmine L.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Kenneth Ayers' ("ALJ Ayers") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Ayers' factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.      **PROCEDURAL AND FACTUAL HISTORY**

A.      **Procedural History**

Plaintiff filed for DIB on February 27, 2018, alleging disability, for which she ceased work on February 19, 2018 due to symptoms associated with multiple sclerosis, including hand and leg weakness, fatigue, and a depressive disorder.  (D.E. 8 (Administrative Record ("R.") at 11, 46–50, 56, 66, 69, 257.)  The state agency denied Plaintiff's applications at the initial and reconsideration levels.  (R. 92–96, 99–101.)  Plaintiff received a hearing before ALJ Ayers on November 19, 2019, and the ALJ issued a written decision on December 23, 2019, finding that Plaintiff was not disabled.  (R. 8–26, 32–64.)  The Appeals Council denied review on August 19, 2020, and Plaintiff subsequently filed the instant appeal in this Court.  (R. 1–6; D.E. 1.)  The parties timely completed briefing.  (D.E. 11, 12, 13.)

B.      **Factual History**

Plaintiff is 33 years old and has a bachelor's degree in English and criminal justice, and a paralegal certificate.  (*See* R. 39, 65.)  She last worked as an order clerk at a medical equipment company.  (*See* R. 40–42; *see also* R. 59–60.)  Prior to that position, Plaintiff worked as a paralegal for various law firms, a customer service representative, and a billing auditor.  (*See* R. 43–45, 59–60.)  In these positions, Plaintiff worked on computers and handled files and paperwork.  (*See id*.)

The following is a summary of the medical evidence in the record.  Plaintiff was diagnosed with multiple sclerosis ("MS") in 2009.  (R. 257–59.)  After suffering multiple "exacerbations" of symptoms in 2009, Plaintiff began taking Tysabri in 2010 and responded well to the medication between 2010 and 2016.  (R. 257–62.)  During that time period, Plaintiff was able to "type at her paralegal job, drive[] without issue, and ambulate[] herself with some dragging of her right foot."  (R. 280–81.)

Plaintiff changed medication to Copaxone in January 2017, but soon after suffered an exacerbation of symptoms in March 2017 and was admitted to University Hospital for evaluation and treatment.  (R. 259–61, 280.)  A neurological examination revealed that Plaintiff had alert mental function, normal cranial nerve function, normal motor functions—with the exception of her right leg, which was rated 4/5.  (R. 281.)  Plaintiff complained of sensory changes, including decreased sensation to light touch.  (*Id.*)  Plaintiff exhibited normal reflexes, normal coordination, and normal gait, including "ab[ility]to ambulate inside room."  (R. 281–82.)  An MRI showed "enhancing lesions suggestive of active demyelination at the central and dorsal spinal cord at C2-C3, right centrum semiovale, periventricular white matter, corpus callosum, and cervicomedullary junction."  (R. 282.)  Plaintiff began a three-day course of Solu-Medrol and continued taking Copaxone.  (*Id.*)

At a follow-up consultation, neurologist Dr. Machteld Hillen noted that Copaxone was not controlling Plaintiff's MS symptoms as well as Tysabri had.  (*See* R. 257–58.)  Dr. Hillen noted that Plaintiff would need to consider the increased risk of exacerbations Plaintiff may experience by not taking Tysabri.  (*Id.*)  Plaintiff continued taking Copaxone and began monthly doses of steroids.  (*Id.*)

During a consultation in March 2018, Dr. Hillen noted that Plaintiff complained that she had left side pain and right leg weakness, which coincided with her starting a new job and bothered her for several weeks.  (*See* R. 340–41.)  A neurological examination showed that Plaintiff had alert mental function, normal cranial nerve function, and normal motor function—with the exception of her right side. (R. 342.)  Plaintiff exhibited normal reflexes, normal sensory function, normal coordination, and normal gait.  (*Id.*)  Dr. Hillen ordered an MRI, which later revealed "[i]ncreased size and conspicuity of a left periatrial periventricular white matter lesion, compatible

with a new lesion." (R. 286.)  No other new or enhancing lesions were identified in her brain or on her spine. (*Id.*)  Plaintiff recommenced taking Tysabri and began taking gabapentin, as well. (R. 287, 418–22, 508.)

Plaintiff attended a psychological consultative examination by Dr. Steven Yalkowsky in June 2018. (R. 399.)  Dr. Yalkowsky diagnosed Plaintiff with adjustment disorder and depression. (R. 401.)  Dr. Yalkowsky "suspected" Plaintiff had "cognitive impact related to [M.S.]," found that the "motivational limitations and other functional issues related to [Plaintiff's] mental health difficulties" had a "moderate to severe" impact, and issued a "guarded" prognosis. (*Id.*)

Also in June 2018, Plaintiff attended a neurological consultative examination by Dr. Rashel Potashnik. (R. 403.)  Dr. Potashnik evaluated Plaintiff's neurological condition and concluded that Plaintiff "[does not] use an assistive device for ambulation.  She can use both hands for fine and gross motor manipulations." (R. 404.)

A routine neurological examination by Dr. Hillen in September 2018 showed little change from Dr. Hillen's prior examination of Plaintiff. (R. 508–09.)  Dr. Hillen noted that Plaintiff had been "stable since [the] last visit," but had "gradually diminishing strength in her [right lower extremity]." (R. 509.)  Dr. Hillen observed that Plaintiff had "no enhancing lesions or new lesion," thus she was possibly experiencing "insidious progression, rather than an attack." (R. 509.)

Plaintiff attended a consultation with podiatrist Dr. Ann Marie Palagiano in October 2018. (R. 526.)  Dr. Palagiano found that Plaintiff suffered from hammer toes on the left foot and had a drop of the right foot, which caused an abnormal gait. (*Id.*)  In November 2018, Plaintiff had reconstructive surgery to correct the hammer toes. (R. 526–31.)  Dr. Palagiano noted in several post-operative consultations that Plaintiff was "doing well," instructed Plaintiff to wear a specific shoe on her left foot, and directed Plaintiff to wear an AFO brace on her right foot. (R. 532–38.)

In January 2019, Dr. Hillen completed a "Multiple Sclerosis Residual Functional Capacity Questionnaire" regarding Plaintiff's conditions.  (R. 514–17.)  On the form, Dr. Hillen indicated that Plaintiff had a hindered gait, could sit for about four hours, could stand and walk for about two hours, would need three breaks per day for thirty minutes each, could rarely lift up to ten pounds and never more, and had postural and manipulative limitations.  (*See id.*)  Dr. Hillen also opined that Plaintiff may be absent from work about four days a month.  (*See* R. 517.)

In September 2019, a neurological examination showed that Plaintiff had alert mental function, normal cranial nerve function, and normal motor function—with the exception of her right side.  (R. 519.)  Plaintiff exhibited normal reflexes, normal sensory function, normal coordination, and normal gait, but Plaintiff exhibited an inability to "lift her right foot off the floor on heel walk and toe walk," and her "[t]andem gait [was] slow, but not uncoordinated."  (*Id.*)  An MRI revealed that one brain lesion was "more conspicuous, but no enhancing lesions or new lesion."  (*Id.*)  Dr. Hillen again noted that Plaintiff was possibly experiencing "insidious progression, rather than an attack."  (*Id.*)  Dr. Hillen increased the dosage of gabapentin, but otherwise made no changes to Plaintiff's medication regimen.  (R. 520.)

During a subsequent consultation in October 2019, Dr. Hillen concluded that Plaintiff's condition was stable, and she should continue taking Tysabri.  (R. 548.)

C.    **Hearing Testimony**

At the administrative hearing on November 19, 2019, Plaintiff, represented by counsel, appeared and testified.  (R. 11.)  Testimony was also taken from Lisa Gagliano ("VE Gagliano"), who testified that Plaintiff's past relevant work included positions as an order clerk, a paralegal, a customer complaints clerk, and a collections clerk.  (R. 58–60.)  VE Gagliano opined that Plaintiff would not be able to perform her past relevant work, but may be able to work in unskilled, light

work positions, such as a routing clerk, mail clerk, or laundry sorter.  (R. 59–61.)  VE Gagliano added that if factoring in handling and fingering limitations, those positions would be unavailable; Plaintiff, in that instance, may be able to work as an usher.  (R. 61.)

## II.   **LEGAL STANDARD**

### A.   **Standard of Review**

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision."  *Cruz v. Comm'r of Soc. Sec.*, 244 F.

App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he [or she] accepts and which he [or she] rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

      **B.**      **The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  A claimant will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the claimant "not only unable to do his [or her] previous work but [unable], considering his [or her] age, education, and work experience, [to] engage in any kind of substantial gainful work [that] exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step, sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571–76, 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits, regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on the claimant's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). RFC is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed severe.   20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant can perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis, where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

III.     **DISCUSSION**

A.     **The ALJ's Decision**

On December 23, 2019, ALJ Ayers issued a decision concluding that Plaintiff was not disabled from February 19, 2018, through the date of the decision.  (R. 8–22.)  At step one, the ALJ found that prior to April 2018, Plaintiff was engaged in SGA, but noted that Plaintiff had not engaged in SGA for more than twelve months and, therefore, the analysis would address only that period.  (*Id.*)

At step two, ALJ Ayers found that Plaintiff had "the following severe impairments: multiple sclerosis, hammer toes, [right][2] foot drop[,] and depressive disorder."  (R. 13.)  These impairments, the ALJ determined, significantly limit Plaintiff's ability to perform basic work activities.  (R. 13–14.)  The ALJ discussed Plaintiff's alleged neurocognitive disorder and found that that impairment is not medically determinable because "the record only indicates that such a disorder was 'suspected,' ([R. 401.]), but there are no records of earlier IQ testing, or even of later IQ testing, to confirm any neurocognitive diminution."  (R. 14.)  Notwithstanding the lack of evidence of such a disorder, the ALJ limited Plaintiff's ability to "simple and routine tasks and decision-making" due to her depressive disorder and potential neurocognitive limitations.  (R. 14.)

At step three, ALJ Ayers found that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing.  (R. 14–16.)  In particular, the ALJ assessed Listings 11.09 and 12.04.  (R. 14.)  Plaintiff's impairments did not meet the requirements of Listing 11.09 for multiple sclerosis.  (R. 14.)  For this listing, a claimant's medical

---

[2] ALJ Ayers incorrectly listed Plaintiff's right foot drop as a "left foot drop" in the step two analysis.  (R. 13.) Throughout the remainder of the opinion, however, the ALJ noted the foot drop correctly as pertaining to Plaintiff's right side.  (*See* R. 14, 17, 18.)  Plaintiff did not bring this error to the Court's attention or request a remedy pertaining to the error, and the error has no impact on the relevant analysis.  (*See* D.E. 11.)  This Court therefore deems the error harmless.

evidence of record must satisfy either the "paragraph A" criterion or the "paragraph B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.09(A)(B). The paragraph A criterion requires "extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities," which is caused by "disorganization of motor function in two extremities." *Id.* at § 11.09(A). The paragraph B criteria require "marked limitation . . . in physical functioning . . . , and in one of the following: 1. Understanding, remembering, or applying information . . . ; or 2. Interacting with others . . . ; or 3. Concentrating, persisting, or maintaining pace . . . ; or 4. Adapting or managing oneself . . . ." *Id.* § 11.09(B).

Assessing paragraph A, ALJ Ayers found that Plaintiff's medical evidence of record failed to establish limitations in at least two extremities, and instead reflected that only Plaintiff's lower, right extremity was affected. (R. 14.) Assessing paragraph B, the ALJ found that while Plaintiff's counsel argued that 11.09 was "close to met," the evidence did not "establish a marked limitation in physical functioning," as required in paragraph B. (R. 14–15.) ALJ Ayers explained that the evidence showed that Plaintiff can stand from a seated position, can balance when walking, has a normal gait, and can use her upper extremities. (R. 14–15.)

ALJ Ayers next assessed paragraph B and paragraph C of Listing 12.04 and found that Plaintiff's alleged mental impairment did not meet the criteria of that listing. (R. 15.) Paragraph B of Listing 12.04 requires a claimant have

> [e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :
>
> 1. Understand, remember, or apply information . . . .
> 2. Interact with others . . . .
> 3. Concentrate, persist, or maintain pace . . . .
> 4. Adapt or manage oneself . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B).  The ALJ clarified that "[a]n extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis."  (R. 15.)  The ALJ found that Plaintiff's mild and moderate limitations[3] did not satisfy the requirements of either "[e]xtreme limitation of one" or "marked limitation of two" areas of mental functioning. (*Id.*)  Thus, Plaintiff did not satisfy the paragraph B criteria of Listing 12.04.  (*Id.*)

> Paragraph C of Listing 12.04 requires that a claimant's

>> mental disorder in this listing category is "serious and persistent"; that is, [claimant has] a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

>> 1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [claimant's] mental disorder . . . ; and

>> 2. Marginal adjustment, that is, [claimant has] minimal capacity to adapt to changes in [his or her] environment or to demands that are not already part of [claimant's] daily life . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  ALJ Ayers observed that the medical evidence of record established that Plaintiff has only moderate limitations, and that Plaintiff's "ability to adapt is only moderately impaired"; therefore, Plaintiff did not satisfy the paragraph C criteria of Listing 12.04.  (R. 16.)

> Assessing Plaintiff's RFC in light of the entire record, ALJ Ayers found that Plaintiff could

>> perform light work . . . [,] except [Plaintiff] has the residual functional capacity to perform less than full range of light work[,] except [Plaintiff] can stand and walk for a total of four hours in an eight-hour workday combined.  She can climb ramps and stairs occasionally but can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch[,] and crawl.  . . . [Plaintiff] can never work at unprotected heights or

---

[3] ALJ Ayers acknowledged that Plaintiff has moderate limitations when understanding, remembering, or applying information; mild limitations when interacting with others; moderate limitations when concentrating, persisting, or maintaining pace; and moderate limitations when adapting or managing herself.  (R. 15.)

> around hazardous moving mechanical parts. Lastly, in terms of mental limitations, she can perform simple, routine tasks and make simple work-related decisions.

(R. 16.)

At step four, ALJ Ayers first considered whether underlying physical or mental impairments could produce Plaintiff's alleged pain or symptoms, and then "determine[d] the extent to which [the impairments] limit [Plaintiff's] functional limitations." (R. 16.) The ALJ found that Plaintiff's impairments could cause the various symptoms Plaintiff alleged,[4] but Plaintiff's statements about "the intensity, persistence, and limiting effects of these symptoms" were not consistent with the medical evidence in the record.[5] (R. 16–19.) The ALJ found that Plaintiff's "impairment would limit her to less than a full range of light exertion, with additional mental limitations," and concluded that someone with Plaintiff's RFC could not perform Plaintiff's past relevant work as an order clerk, paralegal, or customer complaint clerk. (R. 19–20.)

---

[4] ALJ Ayers noted that Plaintiff alleged

> difficulty lifting, standing, walking, remembering[,] and using her hands. She states she is able to walk for approximately three minutes before needing to stop and rest for five minutes before resuming her walk. Additionally, [Plaintiff] states that she can maintain attention for ten to fifteen minutes. [Plaintiff] also reports difficulty dealing with stress . . . . At [the] hearing, [Plaintiff] testified that her conditions have resulted in right lower extremity weakness and memory deficits. She states she has difficult[y] balancing, lifting[,] and carrying. Furthermore, [Plaintiff] testified that her multiple sclerosis has resulted in weakness in her dominant, right hand, with said weakness preventing [Plaintiff] from typing or carrying something as heavy as a gallon of milk. Lastly, [Plaintiff] testified that the infusions she receives for her multiple sclerosis cause her to become very fatigued.

(R. 16–17.)

[5] The ALJ noted that Plaintiff's symptoms were well managed on Tysabri and gabapentin; MRI imaging showed that in 2018 and 2019 Plaintiff had no new lesions and the lesions she had were stable; Plaintiff experienced "some depressed mood associated with her medical condition," but otherwise had "appropriate social skills" and no reported sensory and motor function deficits; Plaintiff had appropriate emotional affect and "no abnormal thought content or serious psychopathology"; Plaintiff had "some subtle weakness in the right lower extremity," but "did not use an assistive device for ambulation, and had the ability to use both of her hands for fine and gross motor manipulations"; and, after having hammer toe reconstructive surgery, Plaintiff healed well and "her condition was deemed stable." (R. 17–18.)

At step five, ALJ Ayers credited VE Gagliano's testimony and found that Plaintiff could work as a routing clerk, mail clerk, or laundry sorter—jobs that exist in significant numbers in the national economy. (R. 20–21.) ALJ Ayers concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 21.)

**B.       Analysis**

On appeal, Plaintiff seeks reversal of the Commissioner's decision and judgment directing the Commissioner to approve Plaintiff's claim. (*See* D.E. 11 at 1, 22.) Plaintiff asserts that ALJ Ayers erred by finding Plaintiff's impairment did not meet Listing 11.09 at step three, did not base the RFC findings on substantial evidence, and failed to consider Plaintiff's pain and subjective complaints. (*See id.* at 14–22.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that ALJ Ayers erred at step three by making a conclusory finding that Plaintiff's impairment did not meet Listing 11.09. (D.E. 11 at 14.) Plaintiff contends that "[e]ven if listing level severity was not precisely met," the ALJ should have "obtain[ed] an opinion from a medical expert to evaluate whether [Plaintiff's] condition could point to a possible equivalence of a determination." (D.E. 11 at 17 (citing *Maniaci v. Apfel*, 27 F. Supp. 2d 554, 557–58 (E.D. Pa. 1998).) Plaintiff further alleges that by concluding that Plaintiff's "condition did not 'equal'" the Listing, the ALJ "not only ignored [Dr. Hillen's report], . . . , but actually misrepresent[ed] the record in claiming that there was no such opinion." (D.E. 11 at 17.)

When assessing a claimant's impairment at step three, an ALJ reviews "the medical evidence of the claimant's impairment" and then "compare[s] [the claimant's impairment] to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). "[T]he ALJ must determine whether [a claimant's] impairment matches, or

is equivalent to, one of the listed impairments," and then the ALJ must "identify[] the relevant listed impairments, discuss[] the evidence, or explain[] his [or her] reasoning." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). However, "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Here, ALJ Ayers considered Plaintiff's multiple sclerosis impairment—Listing 11.09—at step three and proceeded through the sequential evaluation process. (R. 14–16.) The ALJ considered Plaintiff's medical evidence of record, cited specific exhibits in the record, and found that paragraph A criterion of Listing 11.09 was not satisfied "because the record fails to establish the involvement of at least two extremities." (R. 14.) The ALJ then found that Plaintiff did not satisfy the paragraph B criteria because the medical evidence of record "fail[ed] to establish a marked limitation in physical functioning." (*Id.* at 15.) In making that finding, the ALJ discussed and cited specific exhibits in Plaintiff's medical record evidence. (*Id.*)

ALJ Ayers also discussed Plaintiff's contention that the criteria in Listing 11.09 was "close to met," and confirmed that "no acceptable medical source . . . found that [Plaintiff's impairment] equals the listing." (R. 15.) While Plaintiff argues that the information in Dr. Hillen's check-box report should have been sufficient to meet the listing, ALJ Ayers astutely examined the medical records in comparison to the report and found that "the limitations on [Plaintiff's] ability to stand/walk, sit, lift/carry, handling/fingering are unsupported by Dr. Hillen's examination and inconsistent with [Plaintiff's] records . . . [,] which fail to indicate any manipulative limitations." (R. 19.) And, while Plaintiff argues that ALJ Ayers should have obtained an opinion from a medical expert to evaluate whether an equivalence of a determination could be made, that action

was not required or warranted considering his evaluation of the entire record. *See Maniaci*, 27 F. Supp. 2d at 557 (noting "an administrative law judge . . . must obtain an updated medical opinion from a medical expert . . . when no additional medical evidence is received, but *in the opinion of the [ALJ]* . . . a judgment of equivalence *may* be reasonable" (quoting *Todd v. Apfel*, 8 F. Supp. 2d 747, 755 (W.D. Tenn. 1998) (omissions in original) (emphases added)). To that end, ALJ Ayers "identif[ied] the relevant listed impairments, discuss[ed] the evidence, [and] explain[ed] his reasoning," *Burnett*, 220 F.3d at 119, which thereafter "permit[ted] meaningful review," *Jones*, 364 F.3d at 505. This Court finds that the step three analysis was neither conclusory nor unreasonable and, therefore, defers to the ALJ's conclusions. *See Scott*, 297 F. App'x. at 128.

Second, Plaintiff claims that ALJ Ayers erroneously concluded that Plaintiff can perform a range of light work and failed to base the RFC conclusion on substantial evidence. (D.E. 11 at 18.) Plaintiff argues that the ALJ should have given great weight to Dr. Hillen's questionnaire assessment. (*See id.* at 18–19.) Plaintiff alleges that "without sufficient specificity or reference to the record, [ALJ Ayers] summarily dismissed Dr. Hillen's opinions." (*Id.* at 18.)

When determining a claimant's RFC, an "ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). An ALJ determines a claimant's RFC "based on all of the relevant medical and other evidence" the claimant provides. 20 C.F.R. § 404.1545((a)(3). An ALJ may consider a medical opinion, which is "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in performing physical, mental, sensory, or other demands of work or adapting to environmental conditions. 20 C.F.R. § 404.1513(a)(2). However, an ALJ "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  An ALJ considers the whole medical record and "d[oes] not merely rubber stamp [a physician's] RFC conclusion."  *Chandler*, 667 F.3d 356 at 361.  An ALJ considers the persuasiveness of the medical opinion and "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision"—but is not required to explain his or her consideration of additional factors.  20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5).

Here, ALJ Ayers based the RFC determination on relevant, objective medical record evidence and considered the supportability and consistency of Dr. Hillen's opinion.  (*See* R. 16–20.)  The ALJ detailed Plaintiff's reported symptoms, medical records and test results from Plaintiff's hospital and physician visits, Dr. Yalkowsky's psychiatric consultative examination of Plaintiff, Dr. Potashnik's neurological consultative examination of Plaintiff, Disability Determination Services ("DDS") consultant opinions, and Dr. Hillen's opinion.[6]  (R. 16–20.)  The ALJ deemed Dr. Hillen's opinion "somewhat persuasive," but observed that Dr. Hillen's conclusions were submitted on a "check-box form with little to no explanation or support."  (*Id.*)  Specifically, ALJ Ayers observed that Dr. Hillen's conclusions were "unsupported by Dr. Hillen's examination and inconsistent with [Plaintiff's] records at Exhibit 13F and 14F[,] which fail to indicate any manipulative limitations."  (*Id.*; *see also* R. 539–49.)  ALJ Ayers also noted that Dr. Hillen failed to give a reason [Plaintiff] would experience work absences.  (R. 19.)  While Plaintiff essentially argues that the ALJ should adopt Dr. Hillen's opinion—which would constitute a

---

[6] ALJ Ayers outlined Dr. Hillen's opinion that Plaintiff "could stand/walk for approximately two hours[] and sit for approximately four hours in an eight-hour workday," had limitations on her ability to lift weight, had postural and manipulative limitations, and may experience work absences due to her limitations.  (R. 19.)

"rubber stamp" approach, the ALJ appropriately considered the objective medical evidence and reasonably found that the evidence undermined the supportability and consistency of the opinion. *See Chandler*, 667 F.3d 356 at 361.   Accordingly, this Court finds that substantial evidence supported ALJ Ayers' RFC determination and conclusion that Plaintiff can perform light work. *See Hartranft*, 181 F.3d at 360; *see also* 20 C.F.R. § 404.1545((a)(3).

Third, Plaintiff alleges ALJ Ayers failed to properly consider Plaintiff's pain and subjective complaints.  (D.E. 11 at 19.)  Plaintiff asserts that the ALJ cited the "applicable regulations and rulings concerning the proper evaluation of pain in his decision," but did not conduct a thorough analysis of the medical records in his assessment of Plaintiff's pain.  (D.E. 11 at 19–22.)

When conducting an analysis of a claimant's disability, an ALJ will consider the claimant's subjective testimony about his or her symptoms and pain.  *See* 20 C.F.R. § 404.1529(a); SSR 16-3p.  Disability, however, cannot be established solely by a claimant's statements about pain or other symptoms.  20 C.F.R. § 404.1529(a).  "There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment[] which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  *Id.*  An ALJ conducts a two-step analysis in which the ALJ first "determine[s] whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms."  SSR 16-3p.  If the ALJ finds that an underlying impairment could be expected to produce the claimant's symptoms, the ALJ proceeds to the second step and "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult or to function independently."  *Id.*  When conducting the analysis, "[a]n ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work

when this testimony is supported by competent medical evidence." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).  An ALJ, however, "can reject such claims if he [or she] does not find them credible"—provided the ALJ "indicate[s] . . . which evidence he [or she] has rejected and which he [or she] is relying on as the basis for [the] finding." *Id.*

Here, ALJ Ayers conducted a thorough two-step analysis of Plaintiff's symptoms and pain. (R. 16–20.)  He acknowledged Plaintiff's allegations that she has "difficulty lifting, standing, walking, remembering, and using her hands," limitations on how long she can walk and pay attention, difficulty "dealing with stress," "right lower extremity weakness and memory deficits," trouble "balancing, lifting, and carrying," weakness in her hand, and fatigue, among other complaints.  (R. 16–17.)  In the first step, ALJ Ayers found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 17.)  In the second step, however, he found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*)  The ALJ then conducted a thorough analysis of the evidence in the medical records in relation to Plaintiff's complaints.  (R. 16–20.)  Details were given regarding Plaintiff's struggles, including hospitalizations due to exacerbations prior to 2009, new symptoms of arm pain and heaviness and leg weakness, a new lesion on an MRI in January 2016, depressed mood and motivational limitations, right lower extremity weakness, and inability "to lift her right foot from the floor to heel walk and toe walk," inter alia.  (*Id.*)  The opinion also discussed Plaintiff's capabilities and competencies, including her success on Tysabri and gabapentin medications, no new lesions since the January 2016 MRI, ability to ambulate and walk without an assistive device, alertness and lack of memory deficits, normal sensory and motor function, ability to use both hands for fine motor manipulations, and successful hammer toe surgery and stable

condition thereafter, inter alia.  (*See* R. 17–20.)  By analyzing the medical opinions and prior administrative medical findings, ALJ Ayers ultimately found that Plaintiff's medical records did not indicate the ability and manipulation limitations reported by Dr. Hillen, and while the "reports and findings establish severe impairments," Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms do not rise to the level reported."  (R. 19–20.)

In sum, ALJ Ayers appropriately considered Plaintiff's subjective pain and symptoms, in conjunction with the substantial medical record evidence, and provided reasons for rejecting the extent of Plaintiff's complaints about her symptoms.  *See Schaudeck*, 181 F.3d 429, 433.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court finds that ALJ Ayers' factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.

s/ <i>Susan D. Wigenton</i>  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk  
cc:      Parties